IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

MICHAEL DAVID NIEBAUM,

Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

No. C13-4062-MWB

**REPORT AND
RECOMMENDATION**

———————————

Plaintiff Michael David Niebaum seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Niebaum contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded for further proceedings.

## I.     BACKGROUND

Niebaum was born in 1971 and previously worked as a concrete pipe maker, warehouse worker, delivery driver and construction worker. AR 182, 293. He protectively filed for DIB on February 12, 2010, alleging disability beginning on January 15, 2001. AR 19. He filed for SSI on April 28, 2010, alleging disability beginning

February 2, 2007. [1] *Id.* Niebaum alleged disability due to bipolar disorder, attention deficit hyperactivity disorder (ADHD) and generalized anxiety. AR 188. He later added physical impairments of episodic tachycardia, hypertension, obesity and asthma to his claims. AR 21. His claims were denied initially and on reconsideration. AR 93-96. Niebaum requested a hearing before an Administrative Law Judge (ALJ) and on February 9, 2012, ALJ Jan Dutton held a hearing during which Niebaum and a vocational expert (VE) testified. AR 37-75.

On March 13, 2012, the ALJ issued a decision finding Niebaum was not disabled since August 22, 2009. AR 19-29. Niebaum sought review of this decision by the Appeals Council, which denied review on May 22, 2013. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

On June 28, 2013, Niebaum commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in

---

[1] Because Niebaum's previous application was denied on August 19, 2009, his alleged onset date was amended to August 22, 2009. AR 19, 294.

significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*,

205 F.3d 356, 358-59 n.5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III.    SUMMARY OF ALJ'S DECISION

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

(2)    The claimant has not engaged in substantial gainful activity since August 22, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: Attention-deficit/hyperactivity disorder ("ADHD"), not otherwise specified; major depressive disorder, recurrent, severe; bipolar I disorder, single manic episode; generalized anxiety disorder; antisocial personality features; episodic tachycardia; hypertension; obesity; and asthma (20 CFR 404.1520(c) and 416.920(c)).  The claimant has a history of substance use disorder, with claimed sobriety for approximately 16 months.  The State agency noted alcohol dependence and amphetamine dependence but did not find the claimant disabled, even with the substance use disorder.

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertion levels but with the following nonexertional limitations: He should avoid working on ladders or with hazards, as he has reported episodes of losing consciousness. He can frequently perform postural activities.

He is limited to work that is unskilled, SVP 1 or 2, and does not require extended concentration or attention, setting goals, or dealing with job changes. Social interaction can be brief, superficial, and occasional, up to 1/3 of the day, with co-workers, supervisors, and the general public.

(6)     Step 4 – The claimant is capable of performing past relevant work as a construction laborer and as an automotive washer/detailer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(7)     Step 5 – Although the claimant is capable of performing past relevant work, there are a significant number of other jobs existing in the national economy that he is also able to perform.

(8)     The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 21-29. At Step Two, the ALJ found all of Niebaum's alleged impairments were severe. AR 21. She also acknowledged his history of substance use disorder, but based

on the state agency findings, concluded he was not disabled even with the substance use disorder. *Id.*

At Step Three, the ALJ found that Niebaum's cardiovascular and respiratory impairments were not of listing level severity. AR 22. There was no evidence of test values or specific diagnoses to meet the listing requirements. His obesity also did not meet or equal a listing when considered alone or in combination with his other impairments. As for his mental impairments, the ALJ found they did not meet or equal the criteria of Listings 12.04, 12.06, 12.08 and 12.09 when considered singly or in combination. AR 22. She first analyzed the "paragraph B" criteria, which require two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.[2] *Id.* A "marked" limitation is one that is more than moderate but less than extreme. The ALJ found that Niebaum had mild restriction in activities of daily living and moderate difficulties in social functioning and concentration, persistence or pace. *Id.* Niebaum had experienced two episodes of decompensation related to his substance use disorder. AR 23. Therefore, the "paragraph B" criteria were not satisfied. She also considered the "paragraph C" criteria, but found that the evidence failed to establish those criteria, as well. *Id.*

At Step Four, the ALJ conducted her RFC assessment and found Niebaum was capable of performing a full range of work at all exertional levels except that he should avoid working on ladders or with hazards due to reported episodes of losing consciousness. *Id.* The ALJ noted he could frequently perform postural activities. His

---

[2] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

nonexertional limitations included unskilled work, SVP 1 or 2,[3] with no requirements of extended concentration or attention, setting goals, or dealing with job changes. He could handle brief, superficial and occasional social interaction up to one-third of the day with co-workers, supervisors and the general public. *Id.*

As part of her RFC assessment, the ALJ evaluated Niebaum's credibility and found him to be not entirely credible. The ALJ reasoned that there were "possible inconsistencies" between Niebaum's testimony at a prior hearing and his testimony at the most recent hearing on the issue of substance use. AR 24. The ALJ pointed out that in April 2009, Niebaum testified he was not using methamphetamine, but the record showed he was hospitalized in August 2009 and using methamphetamine at that time. The ALJ also noted he had been in inpatient treatment for methamphetamine abuse several times in the past two to three years, but he testified he has been sober since October 2010. *Id.* The ALJ stated, "There is some question as to credibility at the previous hearing, as the claimant's reports about sobriety and abstinence seem inconsistent." AR 25. She referenced testimony in which she had asked Niebaum why he misled the court at the last hearing, and Niebaum stated he had been clean for 13 years but admitted he was using in 2009 and up to October 2010. According to the ALJ, he also acknowledged drinking heavily in 2010, stating he had four to five beers, but the ALJ noted his blood alcohol was ".43, which is 4-5 times the legal limit." AR 25. The ALJ maintained that Niebaum had misled her at the previous hearing when he testified he was abstinent, but now admitted he had been using methamphetamine and Adderall at that time. She also remarked that after his last denial, he had applied again immediately and continued to abuse alcohol for another year, "drinking heavily." *Id.*

---

[3] "SVP" refers to Specific Vocational Preparation, defined in Appendix C of the Dictionary of Occupational Titles as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." A position with an SVP of 1 requires a short demonstration only while an SVP of 2 requires vocational preparation of no more than one month. *See Dictionary of Occupational Titles*, Appendix C.

The ALJ also considered Niebaum's daily activities, work history and third party reports in evaluating the credibility of Niebaum's allegations. She noted that he would watch his daughter, take care of his dog, prepare meals, mow and weed the yard, drive a car and go shopping. AR 26. His earnings record showed low earnings, including some years for which he was not alleging disability. Niebaum's spouse had submitted a written statement supporting her husband's claims of disability. AR 27. The ALJ did not give her opinion great weight due to her relationship with the claimant and her failure to address the ongoing abuse of methamphetamine, Adderall and alcohol in addition to Niebaum's failure to stay in treatment after the prior hearing and his refusal to take his psychological medications.

In evaluating the medical opinions, the ALJ "generally agree[d]" with Dr. Quinn, a state agency psychological consultant, that Niebaum's credibility was partly eroded because he "had not complied with treatment, as the claimant acknowledged; had abused Adderall; and was noted to display drug-seeking behavior." AR 24. Dr. Quinn found Niebaum had difficulty maintaining mood stability, but this was largely secondary to drug use and treatment noncompliance. He found Niebaum was capable of completing single repetitive tasks on a sustained basis, which was consistent with a June 2009 consultative evaluation. *Id.* Dr. Quinn noted work-related difficulties with extended attention, detailed instructions, attendance, stress management, interpersonal functioning, judgment and change, but thought Niebaum was capable of simple, repetitive tasks on a sustained basis with superficial social interaction. *Id.*

The ALJ briefly discussed a consultative evaluation conducted by Dr. Baker in June 2009, noting that Niebaum had reported he had not used methamphetamine in six years and had stated alcohol was his "drug of choice." AR 25. She later stated that Niebaum had misled Dr. Baker about his ongoing drug use and again mentioned that he had intentionally misled her during the evidentiary hearing in April 2009. She noted Niebaum had stressed he was compliant with treatment, yet in June 2009 he had dropped out of all treatment and was abusing drugs again in August 2009 while he appealed his

case to the Appeals Council. AR 26. The ALJ did acknowledge, however, that Niebaum had successfully completed an outpatient program at Jackson Recovery Center from September 2009 through June 2010. AR 25. His global assessment of functioning (GAF) score was 58 on admission and 63 at discharge.[4]  *Id.*

The other medical evidence in the record comes from Siouxland Mental Health Center (SMHC). There are no medical opinions because it is SMHC's policy not to provide medical source opinions. *Id.* The SMHC records show that Niebaum quit his job in June 2009 because he was overwhelmed with responsibilities and decided not to show up. He also quit taking his medications because he thought they were useless and he had tried ten different kinds. *Id.* His GAF score was 55 at that time, but had been 60 on admission and had reached 63 during the past year. *Id.* Niebaum had not attended 12-step meetings following his discharge from the hospital in August 2009 and his Adderall was discontinued. In September 2009, he expressed frustration about this, stating it was due to a misunderstanding, and in October 2009 he stopped all of his medication. *Id.*

In November 2009, Niebaum denied current substance use to his therapist. AR 26. Later that month, he stated he was looking forward to seeing an addiction specialist. In December 2009, he reported he had abused Adderall he had obtained from a friend. In February 2010, he reported his alcohol abuse and amphetamine dependence were in remission. *Id.* Niebaum was seen in July 2010 at SMHC "in crisis." *Id.* He had been

---

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates the individual has moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.* A GAF score of 61-70 indicates the individual has some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but is generally functioning pretty well and has some meaningful interpersonal relationships. *Id.*

using methamphetamine, had not been sleeping and he reported hearing and seeing things. *Id.* He was sent to Mercy Hospital for admission and treatment. After discharge, he began a treatment program in Fort Dodge and indicated that prior to his hospitalization he had been using Adderall that was not his and started smoking methamphetamine. He also admitted he had not been compliant with his medication. *Id.*

In October 2010, Niebaum reported he had relapsed into substance use. According to the ALJ, he tested .43 on a blood alcohol test which the ALJ noted was "4-5 times the legal limit." AR 27. In December 2010, he was avoiding drugs, but had been using alcohol. AR 26. In February 2011, he had been abstinent for more than four months. In October 2011, Niebaum reported he had abstained from cannabis for over 1 year and from stimulants for over 8 months. There is no evidence of relapse in the medical records from February 2011 through November 28, 2011. *Id.* The ALJ concluded she did not find drugs and alcohol material to disability and agreed with Dr. Quinn's assessment.

At Step Four, the ALJ also found that Niebaum was capable of performing his past relevant work as a construction laborer and automotive washer/detailer. AR 27. Alternatively, at Step Five, she found he was capable of performing other work in the national economy such as packager, order picker and laundry worker based on the vocational expert's testimony. AR 28-29. For these reasons, the ALJ found Niebaum had not been under a disability since August 22, 2009. AR 29.

## IV.    *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit

explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.     DISCUSSION

Niebaum argues the ALJ's decision is not supported by substantial evidence because the only opinions in the record come from a non-treating, non-examining source and a consultative examiner from a previous application.  He also argues it was error for the ALJ to find Niebaum had severe physical impairments but no physical limitations and the ALJ should have ordered physical and mental consultative examinations.  Niebaum further argues the ALJ's credibility determination is based on factual errors and the ALJ improperly assumed the role of an adversary in evaluating Niebaum's claim.  I will consider the ALJ's evaluations of the medical evidence and Niebaum's credibility separately below.

### A.     Evaluation of Medical Evidence

Niebaum's arguments concerning the ALJ's evaluation of medical evidence can be narrowed down to two issues: (1) whether it was error for the ALJ to rely on the opinions of a non-treating, non-examining source and a previous consultative examiner instead of ordering new consultative examinations and (2) whether the ALJ erred by identifying severe physical impairments but failing to include sufficient physical limitations in the RFC.  I will discuss each issue separately.

### 1.     Medical Opinions and Consultative Examinations

Niebaum argues the ALJ's decision is not supported by substantial evidence because there are no treating or examining source opinions describing Niebaum's mental or physical work-related limitations from his alleged onset date through the date of the

ALJ's decision. Niebaum contends the ALJ erred by failing to adopt all of the limitations identified by Dr. Quinn, the state agency consultant, or Dr. Baker, a previous consultative examiner, who evaluated Niebaum's mental impairments. He insists the ALJ should have ordered consultative examinations to obtain examining source opinions on Niebaum's physical and mental work-related limitations. The Commissioner contends it was appropriate for the ALJ to give great weight to Dr. Quinn's opinion as it was based on a thorough review of the record, which included Dr. Baker's June 2009 consultative examination. She argues Dr. Quinn's opinion was consistent with Dr. Baker's and appropriately found that Niebaum was not entirely credible. She contends the ALJ adopted limitations that are consistent with Dr. Quinn's and Dr. Baker's opinions and the rest of the evidence in the record.

Because non-examining sources have no examining or treating relationship with the claimant, the weight given to their opinions "depend[s] on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). When evaluating a non-examining source's opinion, the ALJ "evaluate[s] the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." *Id.* The opinions of non-treating, non-examining sources "do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003).

Here, the ALJ stated she "generally agree[d]" with Dr. Quinn's opinion regarding Niebaum's mental impairments. AR 24. She described the limitations he identified, his evaluation of Niebaum's credibility and his opinion that Niebaum could complete simple, repetitive tasks on a sustained basis with superficial social interaction. *Id.* She adopted similar mental limitations in the RFC which include: work that is unskilled, SVP 1 or 2, does not require extended concentration or attention, setting goals or dealing with job changes and brief, superficial and occasional social interaction up to one-third of the day with co-workers, supervisors and the general public. AR 23. Niebaum points out that Dr. Quinn found additional moderate limitations in his ability to perform activities within

a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, which the ALJ failed to include in the RFC. Doc. No. 9 at 11, AR 446-47. Moreover, he emphasizes that Dr. Baker identified more severe limitations, including a GAF score of 45.[5] AR 588. Niebaum contends the ALJ should have at least used Dr. Baker's opinion to evaluate his work-related limitations because it is the only examining source opinion in the record. However, he points out that the ALJ only used this opinion to further discredit Niebaum.

I have reviewed the record and I find the ALJ failed to fully and fairly develop the record before making her RFC determination. Dr. Quinn's opinion was based on Dr. Baker's consultative examination from June 2009 and Niebaum's self-reports. AR 448-49. Although he and the ALJ also discussed some treatment notes, none of these notes contain a medical opinion from a treating source or otherwise provided medical evidence about how Niebaum's impairments affect his ability to function in the workplace. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (noting that the claimant's RFC is a medical question and the ALJ's assessment must be supported by "some medical evidence" of the claimant's ability to function in the workplace.).

Without an opinion from a treating or even examining source for the relevant time period, crucial issues were undeveloped that required consultative examinations for Niebaum's physical[6] and mental impairments. *See Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). The obligation to obtain additional

---

[5] A GAF of 41 to 50 indicates the individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.*

[6] Niebaum's physical impairments will be discussed in more detail *infra* Part V(A)(2).

medical evidence comes from the ALJ's duty to develop the record. *See Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). The regulations provide that a consultative examination may be purchased if the information is insufficient to make a determination on the claim and the needed information cannot be provided by the claimant's medical sources. 20 C.F.R. §§ 404.1519a, 416.919a.

The evidence in the record was insufficient to determine whether Niebaum was disabled and the needed information was unavailable from his medical sources. AR 579-80. The record contains no opinions from treating physicians or consultative examiners since Niebaum's alleged onset date, and his treatment records do not otherwise detail any work-related limitations associated with his impairments. Therefore, I find that the case must be remanded for further development of the record. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (remanding the case where the ALJ relied solely on the opinions of non-treating, non-examining physicians who reviewed reports of the treating physicians to form an opinion on the claimant's RFC). On remand, I recommend the ALJ arrange for consultative examinations to evaluate Niebaum's mental and physical impairments as the ALJ found severe impairments in both categories.

### 2.    *Failure to Include Physical Limitations in RFC*

Niebaum argues it was contradictory for the ALJ to find that he suffers severe physical impairments of episodic tachycardia, hypertension, obesity and asthma, then fail to include related physical limitations in the RFC. Niebaum points out that the ALJ appeared to rely heavily on the opinion of Dr. Staples, a state agency consultant, but she did not explain the weight given to his decision or why she found Niebaum had severe physical impairments when Dr. Staples did not. The Commissioner argues the ALJ appropriately accounted for Niebaum's physical impairments by including limitations of

frequent, but not constant performance of postural activities (such as climbing, balancing, stooping, kneeling, crouching and crawling) and avoiding working with hazards or on ladders. She contends these limitations are consistent with Niebaum's own reports of his symptoms and limitations and that any additional physical limitations are speculative.

A "severe" impairment is one that has more than a minimal impact on a claimant's ability to work. *Page*, 484 F.3d at 1043. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). At Step Two, the ALJ identified severe physical impairments of episodic tachycardia, hypertension, obesity and asthma. She then noted that the focus of the decision was on Niebaum's mental impairments and that he had no medically determinable impairments that would cause exertional limitations. She found his non-exertional physical limitations were postural (frequent, but not constant ability to climb, balance, stoop, kneel, crouch and crawl) and environmental (restricted from work on ladders and exposure to hazards due to reported episodes of syncope). AR 21-22. These limitations were included in the RFC.

The claimant's RFC is "what [the claimant] can still do" despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). However, the claimant's RFC "is a medical question," *Lauer*, 245 F.3d at 704, and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646.

The ALJ's error here lies not in the lack of physical limitations identified in the RFC, but in the lack of evidence (specifically medical evidence) evaluating any physical

impairments or limitations. The only medical opinions in the record discussing Niebaum's physical impairments come from the state agency consultants. On July 1, 2010, Dr. Staples reviewed the evidence in the record and considered alleged impairments of episodic tachycardia, hypertension, overweight and history of polysubstance abuse. AR 438. He concluded there was not a medically determinable impairment that would have a significant effect on basic work activities, but suggested hazard limitations due to Niebaum's history of syncopal episodes. AR 445. Dr. May reviewed this assessment on reconsideration and noted Niebaum's activities of daily living did not show any physical limitations and the record continued to show a non-severe physical impairment. AR 468.

The ALJ failed to discuss either opinion in her RFC assessment. Moreover, what is notably missing from the ALJ's decision and the state agency consultants' opinions is any consideration of Niebaum's asthma, which the ALJ found to be a severe impairment. There are some treatment notes in the record confirming Niebaum's asthma diagnosis, but there are no evaluations or opinions on limitations related to this impairment. This is not evidence that there are none. *See Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 943 (8th Cir. 2009)) (stating "[a] treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting [an] ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment.").

The ALJ clearly gave Niebaum's physical impairments short shrift without adequately developing the record to obtain medical opinions as to how those impairments affect his ability to perform work-related activities. Because there is no opinion in the record from a treating or examining source on Niebaum's physical work-related limitations, or any other medical evidence from which to glean those limitations, a consultative examination is necessary.

**B.      Claimant's Credibility**

Niebaum argues the ALJ improperly evaluated his credibility by using information from his previous application and administrative hearing, which she presided over. In addition, Niebaum contends the ALJ made serious factual errors that were used to discredit him and suggests these errors reflect bias against him. The Commissioner argues Niebaum has not offered sufficient evidence to overcome the presumption of honesty and integrity that is afforded to adjudicators so the ALJ cannot be found to be biased. The Commissioner also argues the ALJ reasonably found that Niebaum made inconsistent statements, which is a proper basis to discredit him. She fails to address Niebaum's assertions of other factual errors made by the ALJ.

The standard for evaluating the credibility of a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider the claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322. The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The ALJ does not need to explicitly discuss each factor as long as he or she acknowledges and considers the factors before discrediting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh*, 222 F.3d at 452. The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnart*, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ's credibility determination was centered on her perception that Niebaum "intentionally misled" her at the evidentiary hearing in April 2009.[7] The ALJ stated, "At the last hearing in April 2009 claimant asserted he was not using methamphetamine but in August 2009 he was hospitalized and was in fact using methamphetamine." AR 24. Before getting into whether this is really inconsistent, I must point out it is not accurate. The hospital records state that Niebaum admitted to abusing his Adderall prescription in August 2009, but he said he had not been using methamphetamine. AR 305. Adderall is a combination of amphetamine and dextroamphetamine mixed salts. *See* RxList-The Internet Drug Index, http://www.rxlist.com/adderall-drug.htm (last visited March 4, 2014). A positive urine drug screen for amphetamines does not necessarily indicate Niebaum was using methamphetamine, as it could have detected the Adderall Niebaum admitted he was abusing. The only suggestion he was using methamphetamine at this time was in the "Physical Examination" portion of the record where the doctor indicated Niebaum was a "heavy user of Methamphetamine," but this is more likely related to Niebaum's reports that he had been using drugs most of his life and methamphetamine was his drug of choice. AR 305-06.

With that inaccuracy aside, any intentional misrepresentation or even inconsistency between these two facts is completely lost on me. It is obviously possible for a person struggling with an addiction to be clean in April but using again four months later. The

---

[7] The ALJ's statements concerning her perception that Niebaum misled her at the previous hearing in April 2009 became progressively more definite throughout the course of her decision. She first stated she was "concerned about possible inconsistences" between his testimony in April 2009 and his current testimony regarding substance use. AR 24. Later, she stated, "There is some question as to credibility at the previous hearing, as the claimant's reports about sobriety and abstinence seem inconsistent." *Id.* In the next paragraph she wrote, "Claimant's creidibility [sic] is affected by the fact that he misled the undersigned at the previous hearing when he testified he was abstinent but now admits he was abusing methamphetamine and Adderall at that time." AR 25. By the end of the decision she had worked all the way up to stating that Niebaum "misled the consultative psychologist Dr. Baker in June 2009 about his ongoing drug use, and also intentionally misled the undersigned at the evidentiary hearing in April 2009." AR 26.

hearing testimony offers no insight as to why the ALJ found Niebaum had intentionally misled her. During the hearing, the ALJ stated, "Well let's get down to the fact that you were not truthful with me at the last hearing. Why did you lie about your drug use?" AR 47. Niebaum replied that he might have been clean at the time, and admitted he had relapsed, but did not think it was at the time of the last hearing. *Id.* The ALJ's own explanation in her decision also offers no proof of misrepresentation. She wrote, "At the [April 2009] hearing claimant stressed he was compliant with treatment, yet in June 2009 (two months later) he dropped out of all treatment and by August 2009 was abusing drugs." AR 26. She then notes that Niebaum was using drugs when he appealed his case to the Appeals Council. While this may be true, it certainly does not establish that Niebaum was untruthful when he testified in April 2009 that he was clean and compliant with treatment. Because this reason for discrediting Niebaum is inaccurate and also does not reflect inconsistent statements, I find it was not a good reason to discredit Niebaum.

The ALJ made another factual error when she discredited Niebaum based on her perception that he was untruthful about his alcohol use. AR 24-25. The ALJ stated Niebaum "acknowledged he was drinking heavily in 2010, he said 4-5 beers, but his Blood alcohol level was .43, which is 4-5 times the legal limit." AR 24-25. Later, she claimed that following his hospitalization in August 2009, Niebaum "continued to abuse polysubstances at least until October 2010 when he tested .43 (4-5 times the legal limit) on a blood alcohol test." AR 27. She also remarked this "relapse" occurred while Niebaum was participating in a drug rehabilitation program. *Id.*

Niebaum points out that the alcohol test referenced by the ALJ was part of his hospitalization in August 2009, not October 2010. AR 313. The ALJ even acknowledged this in an earlier part of her decision where she wrote: "At the time of admission to hospitalization in August 2009, the claimant's urine drug screen was positive for amphetamine and indicated an alcohol level of 43, with a maximum legal limit of 8." AR 25. There are no blood alcohol test results in the record from Niebaum's intensive outpatient treatment in October 2010. AR 480-85.

Making matters worse, the ALJ inaccurately interpreted the blood alcohol content to be four to five times the legal limit, when it was actually much lower. The urine test in August 2009 revealed an alcohol content of 43 mg/dL. AR 313. In Iowa, "alcohol concentration" means the number of grams of alcohol per sixty-seven milliliters of urine. Iowa Code § 321J.1(1). The legal limit in Iowa is an alcohol concentration of .08 grams per 67 milliliters. Iowa Code § 321J.2(1)(b). Niebaum's alcohol concentration of 43 mg/dL amounts to 0.02881 grams per 67 milliliters. This is approximately one-third of the legal limit in Iowa – a far cry from "4-5 times" *over* the legal limit, as stated by the ALJ.

These two factual errors were the primary bases for the ALJ's credibility finding. It is understandable why Niebaum would raise questions of bias given the ALJ's repeated reference to "facts" that were blatantly wrong. However, finding that a professional neutral acted with bias is no small matter. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (to demonstrate bias, the plaintiff must show that "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'"). While the ALJ made significant factual errors, I cannot find that these errors prove she was biased against Niebaum.

Nonetheless, I do *strongly* recommend that this case be assigned to a new ALJ on remand in light of the history between this ALJ and this claimant. Because the ALJ's credibility determination is not supported by good reasons or substantial evidence, a new credibility analysis must be conducted on remand. *See Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003) (reversing where the ALJ's multiple reasons for discrediting the claimant were unsupported by the record because the supposed inconsistencies were not actually inconsistent and the ALJ relied on improper reasons to hold otherwise).

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Niebaum was not disabled be **reversed** and this case be **remanded** to the Commissioner for further proceedings. Judgment shall enter in favor of the plaintiff and against the defendant.

On remand, I recommend that a new ALJ be assigned to this case and that the new ALJ obtain consultative examinations for Niebaum's physical and mental impairments and re-evaluate Niebaum's RFC based on a consideration of the consultative examiners' opinions, a new credibility determination and the rest of the evidence in the record. The ALJ may also need to obtain additional VE testimony depending on the new RFC determination.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 4th day of March, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE